UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| JEAN COOK | * | CIVIL ACTION NO.  11-0811 |
| VERSUS | * | JUDGE DONALD E. WALTER |
| MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAG. JUDGE KAREN L. HAYES |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The District Court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice**.**

### Background & Procedural History

On February 1, 2007, Jean Cook filed the instant application for Title II Disability Insurance Benefits.  (Tr. 28, 47-51).  She alleged disability as of October 8, 2006, because of fibromyalgia.  (Tr. 55).  The state agency denied the claim at the initial stage of the administrative process.  (Tr. 28-32).  Thereafter, Cook requested and received an October 15, 2007, hearing before an Administrative Law Judge ("ALJ").  ( Tr. 17-27, 165-175).  However, in a January 17, 2008, written decision, Judge Bundy determined that Cook was not disabled under the Social Security Act, finding at Step Four of the sequential evaluation process that she was able to return to her past relevant work as a convenience store manager.  (Tr. 6-14).  Cook appealed the adverse decision to the Appeals Council.  Nevertheless, on July 2, 2008, the

Appeals Council denied the request for review. (Tr. 1-3).

On September 5, 2008, Cook sought review before this court. *Cook v. Commissioner, Social Security Administration*, Civil Action Number 08-1335 (W.D. La.). Following briefing by the parties, the undersigned recommended that the court reverse and remand the matter for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). *See* Jan. 28, 2010, Report and Recommendation. (Tr. 177-185). On February 23, 2010, the district court entered judgment to that effect. *See* Feb. 23, 2010, Judgment. (Tr. 176, 204).

Upon remand, the Appeals Council noted that, during the pendency of the appeal, Cook had filed a subsequent application for Title II benefits on May 27, 2009, that was rendered duplicate or redundant by the remand of the prior application. *See* Tr. 188-190, 216-217.[1] Although an ALJ had held a hearing on November 12, 2009, to consider the new application (Tr. 344-377), the Appeals Council directed the ALJ to consolidate the two applications in her decision. *Id*.

On August 6, 2010, ALJ Romona Scales rendered a written decision, wherein she determined that Cook was not disabled under the Social Security Act, finding at step four of the sequential evaluation process that she was able to return to her past relevant work as a convenience store manager. (Tr. 145-158). The ALJ further issued an alternative step five finding that Cook was able to make an adjustment to other work that exists in substantial numbers in the national economy. *Id*.

Cook petitioned the Appeals Council to review the unfavorable decision. On March 30, 2011, however, the Appeals Council denied the request for review; thus, the ALJ's decision

---

[1] The state agency denied the new application at the initial stage of the administrative process. (Tr. 190-191).

became the final decision of the Commissioner. (Tr. 137-139).

On May 31, 2011, Cook filed the instant complaint for review before this court. She alleges the following errors,

1. the ALJ failed to comply with the Commissioner's policies in evaluating the severity of the claimant's fibromyalgia;

2. the ALJ incorrectly applied the various factors set forth in 20 C.F.R. § 404.1527(d) in rejecting the opinion of plaintiff's treating rheumatologist and, instead assigning significant weight to the opinion of the consultative examiner;

3. the ALJ erred by failing to re-contact plaintiff's rheumatologist; and, ultimately,

4. the ALJ's residual functional capacity assessment is not supported by substantial evidence.

**Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court

may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

### Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

>   (4)  If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.
>
>   (5)  If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

See *Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I. Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that Cook did not engage in substantial gainful activity during the relevant period. (Tr. 150). At step two, she determined that Cook suffered from severe impairments of cervical and lumbar degenerative disc disease, fibromyalgia, and obesity. (Tr. 150-151). She concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. *Id*.

### II. Residual Functional Capacity

The ALJ determined that Cook retained the residual functional capacity to perform light

work, reduced by the ability to stand and/or walk for about six hours of an eight hour workday; sit for about six hours of the day, with normal breaks; with the ability to frequently balance, stoop, kneel, handle, and finger with the bilateral upper extremities, but only occasionally climb, crouch, and crawl.[2]

In so deciding, the ALJ partially discounted Cook's testimony and assigned little weight to the assessments of her treating rheumatologist, Robert Goodman, M.D., and the non-examining agency physician, A. Edward Dean, M.D. (Tr. 152-155). Instead, she assigned significant weight to the assessment of the consultative neurologist, Warren Long, Jr., M.D. *Id*.

The thrust of plaintiff's argument on appeal is that the ALJ erred by failing to credit the limitations assigned by her rheumatologist, in lieu of the essentially benign findings rendered by the consultative neurologist. Before delving into plaintiff's various grounds for challenging the ALJ's resolution of the conflicting evidence, however, the court necessarily pauses to recite pertinent portions of the administrative record.

a)  <u>Chronological Summary of Relevant Evidence</u>

From 1975 until December 31, 2005, plaintiff worked at a convenience store owned by

---

[2] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

her parents. (Tr. 56, 20-21). She worked for her parents' company in different capacities, but served as the store manager for the last six years of her employment. *Id*. Unfortunately, the company went out of business at the end of 2005. *Id*. Shortly thereafter, plaintiff moved to Louisiana and married. *Id*. On, or about October 8, 2006, however, she suddenly began experiencing significant pain. (Tr. 20, 22). The pain was located in her back, but mainly her shoulder area. *Id*. She went to her chiropractor, but the chiropractor advised her to go to a pain management clinic. (Tr. 22).

On November 1, 2006, plaintiff had an initial (and apparently final) consultation with William Whyte, II, M.D., of the Louisiana Pain Research Institute. (Tr. 92-95). In his report, Whyte indicated that Cook complained of left-sided neck pain that radiated to the mid-thoracic and lower back pain. *Id*. She described the pain as aching. *Id*. The pain ranged between *one and two* in severity on a ten point scale. *Id*. Activities or positions that provoked the pain included sitting, standing, leaning forward, bending, walking, and exercising. *Id*. Cook complained that the pain impaired her ability to sleep. *Id*. She exhibited an antalgic gait, favoring the right lower extremity. *Id*. Inspection, palpation, and percussion of the cervical, thoracic, and lumbar spine regions were unremarkable. *Id*. Her cervical flexion and extension were limited to 30 degrees because of pain. *Id*. Lumbar flexion was limited to 45 degrees. *Id*. Whyte diagnosed lumbar and cervical radiculitis. *Id*.

In connection with her initial visit with Dr. Whyte, Cook completed a questionnaire. (Tr. 97-105). She indicated on the form that although pain prevented her from lifting heavy objects off the floor, she could lift them if they were conveniently positioned. *Id*. She also indicated that she could not walk more than one-quarter of a mile, but could sit in a chair as long as she liked. *Id*. She also could stand as long as she wanted, but it gave her extra pain. *Id*. In contrast to what

she told Dr. Whyte, Cook indicated that pain did not prevent her from sleeping well. *Id*. She also confirmed that she could sit and stand for several hours, but only walk for one hour. *Id*. Finally, she indicated that, most of the time, her pain was mild. *Id*. Moreover, at its worst, the pain was no more than moderate, and required but mild pain medication such as Tylenol or aspirin. *Id*.

A November 6, 2006, MRI of the lumber spine revealed degenerative disc disease throughout the lumbar spine, mostly characterized by narrowing and dessication. (Tr. 89). There also was a small central disc bulge at L3-4. *Id*. A November 6, 2006, MRI of the cervical spine showed small central disc bulges at C5-6 and C6-7, but no compromise to the thecal sac or spinal cord. (Tr. 90).

Pursuant to a referral by Dr. Whyte, Cook underwent physical therapy starting on November 13, 2006. *See* Tr. 107-119. In contrast to her testimony at the hearing, Cook reported to the physical therapist that she had not worked for the past ten months secondary to her pain. *Id*. Furthermore, she now represented that her pain ranged between four and seven on a ten point scale. *Id*.[3] By November 22, 2006, Cook discontinued the physical therapy because she complained of moderate to severe tenderness all over her body. *Id*.

On December 13, 2006, Cook complained to her treating physician, Dr. Morehouse, that she had pain everywhere. (Tr. 126). The physician diagnosed probable fibromyalgia. *Id*.

On March 4, 2007, Cook completed a Function Report in conjunction with her initial application for disability. (Tr. 65-74). She indicated, *inter alia*, that she was able to load and empty the dishwasher, sweep the floor sometimes, and sometimes wash a load of clothes. *Id*.

---

[3] Just 12 days earlier, Cook told Dr. Whyte that her pain ranged between one and two on a ten point scale.

She bought groceries about once per week, and paid bills about twice per week. *Id*. She was able to fix her husband's lunch and supper and wash his clothes. *Id*. She prepared one complete meal at supper time, which took her 30 minutes. *Id*. She spent less than one hour per day cleaning. *Id*. She was able to walk for one-half mile, and then needed to rest for two hours before resuming. *Id*.

On March 19, 2007, Cook was seen by Robert Goodman, M.D., for a rheumatology consultation. (Tr. 318-320). Goodman noted that her pain was in her muscles, not her joints. *Id*. Cook admitted to pain between her shoulder blades, elbows, and everywhere through her body. *Id*. Activity exacerbated her pain. *Id*. Her musculo-skeletal examination revealed cervical spine range of motion that was 70 percent of normal, with no pain; all other joints were within normal limits. *Id*. She exhibited some tender points. *Id*. Dr. Goodman prescribed daily exercise. (Tr. 321-322).

In connection with her visit with Dr. Goodman, Cook completed a questionnaire whereon she indicated that she did not experience any difficulty walking, climbing stairs, sitting down, getting up from a chair, reaching behind her back or head, or using her hands to grasp small objects. (Tr. 325). She noted, however, that any physical activity made her shoulders hurt. *Id*.

A March 26, 2007, note from Cook's new treating physician, Vicki Cobb, M.D., documents that Cook had seen Dr. Goodman who had diagnosed fibromyalgia, and gave her a prescription for Naproxen. (Tr. 272).

Cook returned to Dr. Goodman for follow-up on April 24, 2007. (Tr. 314-317). She described her pain as a seven on a ten point scale. *Id*. She indicated that her condition had not changed since her last visit. *Id*.

Dr. Cobb's progress notes from August 30, 2007, August 19, 2008, and October 22,

2008, all reflect that Cook's pain level was a zero on a ten point scale. (Tr. 264, 268, 271).

At the October 15, 2007, hearing regarding her initial application, Cook conceded that her doctors had not limited her activities or told her that there were things she should not do. (Tr. 23). She also acknowledged that walking did not hurt her too much, and that she could get through the day if she did not have to use her shoulders. (Tr. 26).

On June 1, 2009, Cook completed another Function Report to accompany her new disability application. (Tr. 229-237). She maintained that she cooked supper about five nights per week for about thirty minutes to an hour. *Id*. She was able to shop once per week for about five hours. *Id*. Nonetheless, she continued to hurt all over, with the inability to stand any pressure on the body. *Id*.

At the request of the state agency, Cook underwent a June 30, 2009, neurological consultation with Warren Long, M.D. (Tr. 286-288). Long noted that Cook was supposedly diagnosed with fibromyalgia some three years earlier. *Id*. Although Cook had multiple trigger points, her neck and back pain was not radicular. *Id*. In fact, she had no sensory deficit whatsoever. *Id*. Long did not believe that Cook fell into the central sensitivity problem experienced by most fibromyalgia patients. *Id*. Her systems were totally unremarkable. *Id*. Upon examination, she demonstrated no gait disturbance. *Id*. Her upper and lower extremity examination was normal. *Id*.

Long stated that if Cook had fibromyalgia, it was not really bothering her. *Id*. He gave her a ten pound weight that she held out with both arms, up over head, and handled it well. *Id*. He conceded that she probably had some trigger areas, but he could not see where she was disabled at that time. *Id*. Long saw no reason why she could not sit, walk, or stand over an eight hour period. *Id*.

On July 13, 2009, a non-examining agency physician, Edward Dean, M.D. reviewed the record, and found that Cook's impairments were not severe. (Tr. 289-290). Furthermore, a non-examining agency psychologist, William Berzman, Ph.D., completed a psychiatric review technique form finding that any alleged mental impairment was not severe. (Tr. 291-305).

In the wake of Dr. Long's benign assessment, Cook returned to Dr. Goodman in September 2009, after a two and one-half year hiatus, for purposes of a "checkup" and to have him complete her "disability papers." (Tr. 313). On September 16, 2009, Goodman obligingly completed an attorney-supplied medical statement wherein he indicated that Cook could stand for 15 minutes at one time for a total of one hour per workday; sit for two hours at a time for a total of two hours in a workday. (Tr. 306-307). She occasionally could lift ten pounds, frequently lift five pounds, and occasionally effect other postural activities. *Id*. He further checked the blanks on the form indicating a history of widespread pain for three or more months, pain in at least 11 pressure points, stiffness, sensation of swollen hands, sleep disturbance, chronic fatigue, and memory loss. *Id*.

Two months later, at the November 12, 2009, hearing, Cook testified that she could use a computer for about 30 minutes before she began to hurt. (Tr. 357-358). Also, the pressure of sitting was painful to her legs. (Tr. 358). She could sit in a wooden chair for about 15 to 30 minutes. (Tr. 359). Nonetheless, she admitted that she could sit for two hours, stand up for 15 minutes, and then sit back down for up to an hour. (Tr. 363). She was able to pick up something as heavy as a 50 pound bag of dog food, but could not carry it very far. (Tr. 360-361, 365). Cook stated that she could be on her feet for 45 minutes while shopping. (Tr. 365). Furthermore, walking at a slow pace was not too much of a problem. (Tr. 366). She agreed that she needed to walk for exercise, but that if she were to walk for one mile or more, then her feet

11

would hurt from where her shoes touched her feet. *Id*. Most of the time, Cook was able to bend over to put on her socks and shoes. (Tr. 366). She also could use her hands and fingers, but the length of time that she could use them varied. *Id*.

      b)      <u>Discussion</u>

As stated earlier, plaintiff takes issue with the ALJ's residual functional capacity assessment, and her resolution of the competing evidence and medical opinions. Cook maintains that the ALJ erred when she declined to adopt the limitations assigned by her treating rheumatologist, Dr. Goodman. The court recognizes that

> "ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir.1985). **The treating physician's opinions, however, are far from conclusive. "[T]he ALJ has the sole responsibility for determining the claimant's disability status."** *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir.1990).
>
> **Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony**. The good cause exceptions we have recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. *Scott*, 770 F.2d at 485. In sum, the ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." *Id.*; see also 20 C.F.R. § 404.1527(c)(2) ("If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all the other evidence and see whether we can decide whether you are disabled based on the evidence we have.").

*Greenspan*, 38 F.3d at 237 (emphasis added).

In this case, the ALJ acknowledged the medical source statement completed by Dr. Goodman, but noted that plaintiff visited Dr. Goodman but three times, with a significant gap

12

between the second and third times, such that Goodman did not enjoy the type of longitudinal relationship that would compel the ALJ to accord his assessment controlling weight. (Tr. 153-154). The ALJ further noted that Goodman's limitations were internally inconsistent and not supported by the balance of the evidence. *Id*. Indeed, the record contains instances where plaintiff admitted to functional abilities in excess of the limitations imposed by Dr. Goodman.

Plaintiff cites court decisions and SSA materials which reflect that orthopedic examinations and objective testing are not particularly relevant for gauging the effects of fibromyalgia. The court is well-acquainted with these sources, and has no quarrel with them. However, the ALJ pegged her decision on the essentially benign findings of the consultative neurologist and her partial crediting of plaintiff's own testimony.

Along these lines, plaintiff argues that because fibromyalgia is a rheumatic disease, Dr. Goodman, a rheumatologist, was the appropriate specialist for assessing its effects. Other courts, however, have recognized neurologists as experts on issues related to fibromyalgia. *See e.g., Johnson v. Duffy*, 2012 WL 620070 (M.D. Pa. Feb. 24, 2012) (permitting neurologist to render opinion that fibromyalgia was caused by trauma). Furthermore, Dr. Long appeared to be well-acquainted with the symptoms and signs of fibromyalgia. *See* Tr. 286. Although Long acknowledged the presence of certain tender points, he opined that to the extent that Cook suffered from fibromyalgia, the condition was not really bothering her. (Tr. 287). Dr. Long's opinion is consistent with Cook's several office visits with Dr. Cobb, where she reported zero pain. *See* discussion, *supra*.[4]

---

[4] Insofar as plaintiff harbored any reasonable doubts concerning Dr. Long's experience with, or knowledge of, fibromyalgia, she could have exercised her right to cross-examine him. *See Lidy v. Sullivan*, 911 F.2d 1075, 1077 (5th Cir. 1990) (claimant enjoys right to cross-examine physician).

Plaintiff further contends that the ALJ should have considered all of the criteria set forth in 20 C.F.R. § 404.1527(d)(2) before declining to credit Dr. Goodman's limitations. However, the ALJ need not perform a detailed analysis of § 404.1527(d)(2) factors where, as here, the record contains reliable medical evidence from another examining physician. *See Holifield v. Astrue*, 402 Fed. Appx. 24 (5th Cir. Nov. 10, 2010) (unpubl.) (citation omitted); *see also Bullock v. Astrue*, 2007 WL 4180549 (5th Cir. 11/27/2007) (unpubl.).

In sum, the undersigned finds that the ALJ's decision to place little weight, or to effectively reject the limitations recognized by Dr. Goodman is supported by substantial evidence. *Ward v. Barnhart*, 192 Fed. Appx. 305, 308, 2006 WL 2167675 (5th Cir. 08/02/2006) (unpubl.); *see also Nugent v. Astrue*, 2008 WL 2073891 (5th Cir. May 16, 2008) (ALJ entitled to discount treating physician's conclusory statement because it contradicted earlier treatment notes, objective medical findings, and other examining physicians' opinions); *Richard ex rel. Z.N.F. v. Astrue*, 2012 WL 2299479 (5th Cir. June 15, 2012) (unpubl.) (ALJ may discredit physician's opinion by pointing to contrary evidence, albeit however tersely); *Garth v. Astrue*, 393 F. App'x 196, 199 (5th Cir. Aug. 26, 2010) (unpubl.) (court noted that ALJ *could have* discounted treating physician's opinion because the opinion contradicted his own treatment notes and the claimant's admissions); *Vansa v. Astrue*, 423 F. App'x 381, 383 (5th Cir. April 20, 2011) (unpubl.) (upholding ALJ's decision to discount treating physician's opinion because, as the ALJ explained, it was "not supported by the objective findings of his own clinic notes nor by the evidence as a whole.").[5]

---

[5] Plaintiff also argues that the ALJ failed to fully and fairly develop the record by not re-contacting Dr. Goodman in an effort to resolve the ALJ's concerns about his findings. The regulations provide that the Commissioner will seek additional evidence or clarification from a treating source when: 1) the report from the source contains a conflict or ambiguity that needs to be resolved; 2) the report does not contain all of the necessary information; or 3) the report does

The court observes that because of the significant subjective component to fibromyalgia, the claimant's credibility may prove particularly relevant. When assessing credibility, the ALJ is required to consider the objective medical evidence, the claimant's statements, the claimant's daily activities, and other relevant evidence. SSR 96-7p. The ALJ also must consider inconsistencies in the evidence and conflicts between the claimant's statements and the remainder of the evidence. 20 C.F.R. § 404.1529(c)(4). However, the ALJ need not follow formalistic rules in her credibility assessment. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

In this case, the ALJ determined that plaintiff was partially credible. *See* Tr. 152.[6] Nonetheless, the ALJ concluded that plaintiff's statements regarding the limiting effects of her

---

not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1512(e).

Here, however, it is manifest that the ALJ discounted Dr. Goodman's assessment because it was not supported either by his own limited treatment history or other record evidence. This rationale does not appear to be one of the three grounds that would require the ALJ to re-contact the physician. But, to the extent that the ALJ was obliged to re-contact Dr. Goodman, the court observes that an ALJ's failure to adequately develop the record does not automatically compel reversal. *Hyde v. Astrue*, Docket No. 07-30748 (5th Cir. May 12, 2008) (unpubl.) (citing *Kane v. Heckler*, 731 F.2d 1216 (5th Cir. 1984)). To obtain reversal because of an ALJ's failure to adequately develop the record, the claimant must also demonstrate resulting prejudice. *Brock v. Chater*, 84 F.3d 726 (5th Cir. 1996). "To establish prejudice, a claimant must show that [she] could and would have adduced evidence that might have altered the result." *Id.* (internal quotation marks omitted). Mere speculation that additional evidence might have made a difference does not suffice. *Hyde, supra*. Plaintiff has not made that showing here.

[6] Indeed, plaintiff's own testimony undermines the bases for some of the limitations imposed by Dr. Goodman. For instance, during times of candor, Cook confessed the ability to sit, stand, and/or walk for extended periods. *See* discussion, *supra*. Also, to the extent that she needed a sit/stand option, the vocational expert testified that this additional limitation would not preclude Cook from performing her past relevant work as an office manager. (Tr. 370). Furthermore, her admission that she could lift a 50 pound bag of dog food from her car undermines her current argument that there is no evidence to support a finding that she could lift and carry up to 20 pounds. *Id*.

15

symptoms were not credible to the extent that they were inconsistent with the ALJ's residual functional capacity assessment. (Tr. 152). Where the record conflicted, the ALJ credited the benign examination findings of Dr. Long. The ALJ's analysis satisfied the requirements of 20 C.F.R. § 404.1529, and her resolution is supported by substantial evidence. *See Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. Jan. 19, 2007) (unpubl.) (opinion as a whole gave sufficient reasons and documentation for the ALJ's credibility determination); *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. Jan. 3, 2008) (unpubl.) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective complaints were not given enough weight is unavailing); *Hernandez v. Astrue*, 2008 WL 2037273 (5th Cir. May 13, 2008) (unpubl.) (despite claimant's subjective allegations of pain, the ALJ gave "greatest weight" to treating physician's opinion).

  The undersigned concludes that the Commissioner's residual functional capacity assessment is supported by substantial evidence.[7]

### Conclusion

  The Commissioner in this case was tasked with determining whether plaintiff was disabled. In so doing, he considered the claimant's testimony, the medical record, and expert opinion evidence. The evidence by no means was uniform and could have supported a different outcome. Such conflicts in the evidence, however, are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted). This court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence

---

[7] Plaintiff does not allege any error with the ALJ's step four, or alternative step five, finding, that is independent of her challenge to the sufficiency of the residual functional capacity assessment.

weighs against the Commissioner's decision." *Newton, supra*.[8] That is not to say that the Commissioner's decision is blemish-free, but procedural perfection in the administrative process is not required, and any errors do not undermine confidence in the decision.

For the foregoing reasons, the undersigned finds that the Commissioner's determination that Cook is not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error. Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, in its entirety, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE**

---

[8] Admittedly, this court has expanded upon some of the reasoning given by the Commissioner for his decision. Generally, courts "only may affirm an agency decision on the basis of the rationale it advanced below." *January v. Astrue*, No. 10-30345, 2010 WL 4386754 (5th Cir. Nov. 5, 2010) (citation omitted). One exception to this rule, however, is harmless error, i.e. absent the alleged error or omission, there is "no realistic possibility" that the ALJ would have reached a different result. *Id*. This exception is applicable here. Further, the Fifth Circuit implicitly has sanctioned the federal courts' practice of assigning independent reasons for discounting newly adduced evidence. *See e.g., Foster v. Astrue*, 2011 WL 480036 (5th Cir. Feb. 10, 2011) (unpubl.); *Garth v. Astrue*, 393 Fed. Appx. 196 (5th Cir. Aug. 26, 2010) (unpubl.).

**SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 15th day of August 2012.

*[signature]*
KAREN L. HAYES
U. S. MAGISTRATE JUDGE